George Bolzer

*v.*

The People of the State of Illinois.

*Filed at Ottawa June 15, 1889.*

1. Criminal law—*murder—what constitutes.* If there be an old quarrel between A and B, and they are reconciled, and then, upon a new and sudden falling out, A kills B, this is not murder; but if it is made to appear that the reconciliation was but pretended or counterfeit, and that the hurt done was upon the force of the old malice, it is murder. The act shall be attributed to passion produced by provocation, and not to the old grudge, if it appears the old grudge had ceased.

2. Same—*provoking an assault—with intent to kill the assailant.* Whether a person accused of having committed murder formed a deliberate purpose to kill the deceased, and went to the house of the latter and insulted his wife with the design of inciting the deceased to an attack, so as to have a pretext for killing him in the conflict, is a question within the exclusive province of the jury to determine from the evidence.

3. Same—*self-defense.* On the trial of one upon the charge of murder, in a case where the deceased sought the accused at his own house, entered the same in a violent manner and attacked him, the wife of the deceased accompanying him and joining in the attack, they both using deadly instruments in their assault, it is the province of the jury to determine whether the occurrences which took place in the prisoner's house were such as to justify the plea of self-defense, when considered by themselves, without reference to anything which had happened prior to the beginning of the fight.

4. Same—*threats.* Where provocation intervenes a threat of a prisoner and the killing by him, it is not a conclusive presumption of law that the killing was in pursuance of the threat, and not upon the pas-

sion produced by the subsequent provocation. It is for the jury to say whether the act of killing, in such a case, was the result of present provocation, or of deliberate intent to kill, previously formed.

5. Whether a homicide was committed in pursuance of threats previously made, or in self-defense against an attack made upon him in his own house, is a question for the jury; and it is proper for them to take into consideration all the circumstances under which the threats were made, with a view of determining whether or not they were the expressions of a deliberate purpose or design to kill, or whether they were but the ebullitions of a sudden passion, followed by reconciliation.

6. Upon the trial of a charge of murder, the prosecution proved that a month or two before the killing, which took place on an attack of the deceased upon the defendant, the latter, while somewhat intoxicated, said, "he would not leave the place or town before he killed" the deceased: *Held,* that in determining the degree of malice implied in the threat, it was proper for the jury to take into consideration the facts that the defendant was more or less intoxicated at the time; that he and the deceased were in the habit of quarreling one day and becoming friends the next day; and that before the killing they had become reconciled, and were on friendly terms on the day of the killing.

7. In the same case, the prosecution proved, by another witness, that on the day of the killing the prisoner showed the witness a revolver, and said he was going to shoot the deceased that night, because he owed him two dollars and had refused to let his wife have fifty cents. The prisoner testified that he told the witness that deceased wanted to fight one B., and said, "Well, he (deceased) insulted me several times the same way, and if he comes to me again that way I am going to smash him;" that witness said, "Let him go,—you know how he is," and that he (the prisoner) said, "I am not going to do anything unless he attacks me again, as he has done several times heretofore:" *Held,* that in determining the degree of malice implied from this threat, the jury were authorized to consider the explanation made by the prisoner, and to give to his explanation such weight as they might think it entitled to, and also the fact that such threat made but a slight impression on the witness.

8. A threat to defend one's self in the event of being attacked, does not imply the same malice and evil intent as a threat to kill, unaccompanied by any qualifying words.

9. In the same case, defendant's counsel asked the court to instruct the jury that they had the right to take into consideration all the circumstances under which the threats were made, in determining the weight to be given to them, and in deciding the question whether or not they were the expression of a predetermined and well-defined intention on the part of the accused to kill the deceased: *Held,* that the refusal of the instruction was error.

8—129 ILL.

10.   The defendant's counsel offered to prove that the prisoner had been previously attacked by the deceased with a hatchet, and had had the deceased bound over to keep the peace, which the court refused to admit: *Held,* that this proof should have been admitted, not for the purpose of excusing the subsequent conduct of the prisoner, but as tending to explain the threats, and as tending to confirm the prisoner's own account of the nature and character of those threats.

WRIT OF ERROR to the Circuit Court of La Salle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

Mr. JAMES H. ECKELS, and Mr. RECTOR C. HITT, for the plaintiff in error:

The threats were improperly admitted, for the reason they do not constitute any part of the *res gestæ.* What occurred at Bolzer's house at the time of the shooting makes up the case for or against the defendant. If then and there a legal provocation was given, the conduct of the defendant should be ascribed to that, and not to any previous quarrel or threats. *State* v. *Johnson,* 2 Jones' L. 247; *Copeland* v. *State,* 7 Humph. 429; *State* v. *Baker,* 1 Jones' L. 267; *State* v. *Hill,* 4 D. & B. 491; Herrigan & Thompson on Self-defense, 78, 203.

The court erred in refusing defendant permission to prove what was the reputation of the deceased for quarreling, fighting and viciousness in the community where he resided. *Williams* v. *People,* 54 Ill. 423; *Monroe* v. *State,* 5 Ga. 75; *State* v. *Bryant,* 55 Mo. 75; *State* v. *Keene,* 50 id. 367; *Flannagan* v. *State,* 46 Ala. 703; *Commonwealth* v. *Flannagan,* 8 Phil. 430; *People* v. *Edwards,* 41 Cal. 640; *Field* v. *State,* 47 Ala. 603; *Hudson* v. *State,* 3 Texas L. J. 21; *People* v. *Anderson,* 39 Cal. 703; *Wise* v. *State,* 2 Kan. 419; *State* v. *Aban,* 39 Wis. 185; *Hurd* v. *People,* 25 Mich. 418; *McKenna* v. *People,* 18 Hun, 580; *Harrison* v. *Commonwealth,* 79 Va. 374; Herrigan & Thompson on Self-defense, 695; 2 Bishop on Crim. Proc. secs. 609-625.

It was no less error to refuse the defendant permission to introduce evidence of a prior assault of deceased, and the proceedings binding him to keep the peace.

Mr. GEORGE HUNT, Attorney General, for the People:

We know of no rule of law that renders incompetent the declarations of a party to the suit concerning the matter in suit, voluntarily made at any time.   Evidence of previous threats, even when far less direct than in this case, has been admissible as tending to show the guilt of defendant. *Schoolcraft* v. *People*, 117 Ill. 271.

To justify a killing in self-defense, it is not sufficient to show that the deceased was the assailant, but it must also appear that the danger was so urgent and pressing, that in order to save his own life, or to prevent his receiving great bodily harm, the killing was absolutely necessary.   Criminal Code, sec. 149; *Kinney* v. *People*, 108 Ill. 519.

A person can not avail himself of the right of self-defense, if the necessity for its exercise is brought on by his deliberate and lawless acts for the purpose of taking life.   1 Wharton on Crim. Law, 476, 486; 1 Russell on Crimes, 718, 719; *Hughes* v. *People*, 116 Ill. 330; *Adams* v. *People*, 47 id. 378; *State* v. *Neely*, 20 Iowa, 116.

No reputation of previous conduct of deceased could justify the defendant in following up and shooting the deceased after he had retreated from the fight.   2 Bishop on Crim. Proc. 612, 619.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This was an indictment in the Circuit Court of La Salle County against George Bolzer for the murder of Nicholas Hau on July 15, 1888.   The jury found the prisoner guilty of murder as charged, and fixed his punishment at imprisonment in the penitentiary for life.   Motion for new trial was overruled, and judgment rendered on the verdict.

Bolzer and Hau were laboring men, the former a farm hand and the latter a bottle blower.   They lived in Streator, and were near neighbors, there being one house between the houses

which they occupied.    They were own cousins, and came together to America in the same ship.

Between one and two o'clock on the afternoon of July 15, 1888, Bolzer called for Hau at the latter's house, and the two went together to the saloon of one Schaub in Streator, where they remained together a few moments and separated.   About four o'clock Bolzer returned to his home, and, finding that his wife was visiting Mrs. Hau, went after her.   He used harsh language towards his wife, and, upon being reproved for doing so by Mrs. Hau, he abused the latter also.   He had been drinking during the day.   Through the efforts of one Kreitzer, who occupied a part of the house in which Hau lived, Bolzer was made to return to his own house.   In a few moments Hau returned, and entered Bolzer's house and played with his child. He then left Bolzer's house to go to his own house.   After he left, he was told that Bolzer had abused his wife.   This made him angry, and he came back and again went into Bolzer's house.

Kreitzer says, that the deceased, upon entering the defendant's home, seized the defendant by the hair and struck him in the face; that the two fought together in the corner of the room; that Mrs. Hau came in with a piece of iron in her hand and struck the defendant over the head with it twice, and went out and got a brick, and struck him over the head with the brick; that he (Kreitzer) took hold of the brick and threw it out and pushed the defendant back; that the defendant ran away from the deceased into the back room or kitchen and shut the door; that the deceased found a hammer near the wall, and opened the door of the back room and struck Bolzer with the hammer twice in his right side; that Bolzer was about two feet from the door when he was struck; that the door was open about two feet; that Bolzer stretched out his right arm and shot; that Hau died in about forty minutes afterwards. On the first trial of the case, Kreitzer testified that Hau was striking Bolzer, when Bolzer shot him; on the second trial he

testified, that it was not more than a second and a half after Hau struck the defendant with the hammer before he was shot, and that he had the hammer in his hand when the shot was fired.

Mrs. Hau testifies, that she went into Bolzer's house and raised her hand to strike him in the head with a brick, while he and her husband were fighting, but that he kicked her on the forehead, and made the brick drop from her hand; that she then picked up a wedge or railroad spike and struck him over the head with it; that she "made to strike him again," but Kreitzer told her to let him alone; that Kreitzer parted the two men; that Bolzer went into the kitchen and shut the door; that her husband picked up a hammer from the floor, and opened the door and struck Bolzer twice with it, once in the breast and once in the side; that her husband was told by Kreitzer to fight no more, and threw down the hammer and said he was going out; that she went out ahead, and heard the report of the pistol after she had gone as far as the next house. She says, upon cross-examination, that Bolzer kicked backwards before she struck him; that he hit her over the left eye with his heel; that she was directly behind him and struck him twice with the iron in the head.

The defendant says, that Hau came into his house and charged him with having used abusive language towards his wife, and he denied it; that Hau grabbed him by the throat; that Mrs. Hau struck him with a brick between the eyes and nose; that Kreitzer struck him with a stone or brick; that Hau tore his shirt and seized a chair to strike him, but he took the chair from him and threw it into the bed room; that the deceased took hold of another chair, but Mrs. Bolzer got it away from him; that Hau took a hammer and struck him in the back of the head, and, when he turned around, struck him with it again in the breast; that he ran into the kitchen and shut the door; that Hau opened the door, and, as he opened it, struck him a third time on the shoulder, saying—"son of

a bitch—I kill you"; that he (Bolzer) had the revolver in his hand and shot; that he did not know which way or how he shot.

Upon the trial of the case the prosecution placed a witness by the name of Reingarde Schwan upon the stand, who swore, that, a month or two before the shooting, Bolzer came into her grocery and bought a cigar; that he said, at that time, "he would not leave the place, or the town, until he killed Nick Hau"; that he was drunk at the time, and walked and talked like a man, who had too much beer in him; that Hau and Bolzer were always quarreling, and had been in the habit of fighting each other, and would be friends one day and enemies the next day.

The prosecution also produced a witness named Henry Oster, who swore, that he was in Schaub's saloon between 2 and 3 o'clock on the afternoon of July 15, 1888; that Bolzer was there and drank a glass of beer with him; that Bolzer took him aside into a little room, and showed him a revolver, and said he was going to shoot Hau that night, because Hau owed him $2.00 and had refused to let Mrs. Bolzer have fifty cents; that he (Oster) told Bolzer not to shoot Hau for that, but to give his revolver to Schaub to keep "until tomorrow; may be that you will get drunk tonight, that you will shoot him"; that, after that, the witness saw Hau through the window, but did not tell him Bolzer was going to shoot him.

It also appears, that, when Bolzer went to Hau's house that afternoon to get his wife to come home and used abusive language towards her and Mrs. Hau, he flourished his revolver in the presence of the women and submitted it to Kreitzer for examination.

The defendant testified, that he had no recollection of telling Reingarde Schwan that he was going to kill Hau; that he had a revolver, which he had left at the saloon of a Hungarian to be raffled for; that the man who drew it in the raffle failed to come for it; that he went to the Hungarian that afternoon and received the revolver; that, after inviting Oster to take a

glass of beer at Schaub's saloon, he told Oster that Hau wanted to fight one Boyer, and said to Oster: "Well, he insulted me several times the same way, and if he comes to me again that way I am going to smash him"; that Oster replied: "let him go, you know how he is"; that he (Bolzer) then said, "I am not going to do anything unless he attacks me again as he has done several times heretofore."

The defendant offered to prove that Hau had made an attack upon Bolzer at one time with a hatchet; that in March, 1888, Bolzer had gone before a justice of the peace in La Salle County and had Hau bound over to keep the peace; but the court refused to allow the offered testimony to be introduced.

Two theories in regard to the death of Hau are naturally suggested by the facts thus detailed. One is that plaintiff in error formed a deliberate purpose in his own mind to kill the deceased, and went to the latter's house and insulted his wife in order to provoke him to a conflict, and then, after the conflict was provoked and while it was going on, shot the deceased in pursuance of the purpose so formed. This is the theory of the State.

Another theory is, that the plaintiff in error fired the fatal shot, not in pursuance of a previously formed design, but in self-defence, during an attack upon him in his own home, which he had not intentionally provoked, and under such circumstances as to induce in the mind of a reasonable and prudent man the belief that it was necessary to kill, in order to save his own life, or prevent great bodily harm to himself. This is the theory of the defence.

It is claimed on behalf of the prisoner, that he went into Hau's house on the afternoon of July 15 merely because his own wife happened to be there, and that his insult to Mrs. Hau was only the result of an unpremeditated burst of anger produced by her interference in the quarrel between himself and his wife. Whether the language abusive of Mrs. Hau was uttered for the reason thus stated, or with the design of inciting

the deceased to an attack when he should be informed of it, was a matter which it was within the exclusive province of the jury to determine.

It was also the province of the jury to determine, whether the occurrences, which took place after the deceased entered the house of the prisoner and began the attack, were such as to justify the plea of self-defence, when considered by themselves and without reference to anything which happened prior to the beginning of the fight.

The object of proving the threats previously made by the plaintiff in error was to show, that he entertained malice towards the deceased and had formed the design of killing him. But the evil purpose indicated by such threats may have been abandoned before the killing occurred. A genuine reconciliation may have taken place between the parties. It may also be true, that the threats were the mere ebullitions of momentary anger, and not the expressions of a deliberate intention.

Where provocation intervenes between the threat and the killing, it is not a conclusive presumption of law, that the killing was in pursuance of the threat and not upon the passion produced by the provocation. It is for the jury to say, whether the act of killing was done because of the present provocation, or because of a deliberate intent to kill previously formed. In the present case, whether Bolzer killed Hau in pursuance of the threats previously uttered, or in self-defence because of the attack made upon him in his own home, was a question to be decided by the jury upon the evidence. It was, therefore, proper for them to take into consideration all the circumstances, under which the threats were made, with a view of determining whether or not they were the expressions of a deliberate purpose or design to kill.

"If there be an old quarrel between A. and B. and they are reconciled again, and then upon a new and sudden falling out, A kills B, this is not murder; but if upon circumstances it appears that the reconciliation was but pretended, or counter-

feit, and that the hurt done was upon the force of the old malice, it is murder." Here we have the true doctrine. The act shall be attributed to passion produced by provocation, and not to the old grudge, if it appear that the old grudge has ceased. * * * "If A challenge B to fight; B declines the challenge, but lets A know that he will not be beaten, but will defend himself; if B going about his vocation, wears his sword, is assaulted by A and killed, this is murder in A; but if B had killed A upon that assault, it had been *se defendendo,* if he could not otherwise escape," etc. * * * In the case of *The Queen* v. *Kirkham,* 8 Car. & P. 115; 34 Eng. Com. L. 318, where a father stood indicted for the murder of his son, it appeared in evidence, that the act of killing was preceded by such an immediate act of provocation, as would extenuate the crime to manslaughter, unless malice was shown. The crime was committed on Saturday and testimony was given of threats to kill the deceased, uttered by the prisoner on the preceding Monday and Wednesday. The jury was instructed that the question of manslaughter or murder depended upon the fact, whether these threats were the mere ebullitions of momentary anger, or the expressions of a deliberate purpose; "so that, if they believed that on the Monday or Wednesday before, the prisoner used the threats deliberately, then all the quarreling and wrestling might be dismissed from their consideration." (*State* v. *Johnson,* 2 Jones' Law, 247; 64 Am. Dec. 582; *State* v. *Johnson,* 1 Iredell's Law, 354; 35 Am. Dec. 742; *State* v. *Ta-cha-na-tah,* 64 N. C. 614).

In determining the degree of malice implied in the threat, made a month or two before the shooting in the presence of the witness Schwan, it was proper for the jury to take into consideration the facts, that the plaintiff in error was more or less intoxicated at the time; that he and the deceased were in the habit of quarreling one day and becoming friends the next day; and that, before the deceased was killed, they may have become reconciled, it appearing that they went to Streator to-

gether between one and two o'clock on the afternoon of July 15 apparently on friendly terms with each other.

In determining the degree of malice implied in the threat made on July 15 in the presence of Oster, the jury were authorized to consider the explanation of that threat made by the plaintiff in error, and to give to his explanation of it such weight as they may have thought it entitled to. According to his version of the matter, he had heard of a fight which Hau intended to have with one Boyer, and being thus reminded of the attacks which he alleges to have been made upon himself by Hau, he threatened to "smash" the latter in case he should be again attacked. His words would appear to have made but slight impression upon Oster, as the latter saw the deceased soon after the words were uttered, but gave the deceased no warning.

A threat to defend one's self in the event of being attacked does not imply the same malice and evil intent as a threat to kill, unaccompanied by any qualifying words. No specific reference was made to the threats proven by the prosecution in any of the instructions on either side that were given to the jury. The defendant's counsel asked the court to instruct the jury that they had the right to take into consideration all the circumstances, under which the threats were made, in determining the weight to be given to them, and in deciding the question whether or not they were the expression of a predetermined and well defined intention on the part of the accused to shoot and kill the deceased. Under the principles already announced the refusal to give such an instruction was error.

The defendant's counsel also offered to prove that the prisoner had been previously attacked by the deceased with a hatchet, and had had the deceased bound over to keep the peace. This proof should have been admitted, not for the purpose of excusing the subsequent conduct of the prisoner in shooting the deceased, but as tending to explain the threats

made to Oster, and as tending to confirm the defendant's own account of the nature and character of those threats.

For the errors herein indicated the judgment of the Circuit Court is reversed and the cause is remanded.

*Judgment reversed.*