(No. 11512.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VINCENZO MARTELLARO, Plaintiff in Error.

*Opinion filed December 19, 1917.*

1. CRIMINAL LAW—*what treatment will not justify a person in arming himself and returning to the attack.* The fact that a person is forcibly ejected from a saloon by the bar-tender because of his wrongful conduct does not justify him in arming himself with a revolver and returning to the saloon, where he has another fight in which he kills the bar-tender, nor does it justify reducing the verdict to manslaughter if all the elements of murder are present.

2. SAME—*a judgment of conviction will not be reversed merely because evidence is conflicting.* A judgment of conviction will not be reversed as unwarranted by the evidence merely because there is a conflict in the testimony, but only where the evidence is so unsatisfactory as to justify entertaining a reasonable doubt of the defendant's guilt.

3. SAME—*whether the slayer acted under irresistible passion is a question for the jury.* The existence and sufficiency of an irresistible passion under which the slayer acted, and whether it arose from provocation so aggravated in character as to render the slayer's mind incapable of cool reflection, are questions for determination by the jury.

4. SAME—*when malice is implied from deliberate injury.* While malice may not always be implied where one person deliberately injures another, it is always implied where the injury is deliberate and intentional and not inflicted in self-defense or in a sudden heat of passion caused by provocation apparently sufficient to make the passion irresistible.

5. SAME—*when punishment fixed by jury will not be changed by reviewing court.* It is the duty of the jury in a murder trial to say by their verdict what the punishment shall be, and unless it clearly appears that they have abused their power it is not the province of a reviewing court to interfere in that respect.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding.

FRANCIS BORRELLI, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT W. MARTIN, State's Attorney, and ALBERT D. RODENBERG, for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error, Vincenzo Martellaro, (hereafter referred to as defendant,) was indicted by the grand jury of Will county for the murder of Antonio Carugati. The homicide occurred in a saloon in Joliet on July 1, 1916. Deceased was employed in the saloon as a bar-tender. At his trial defendant pleaded not guilty. The jury returned a verdict finding defendant guilty of murder and fixing his punishment at death, and he was by the judgment of the court sentenced to be executed February 16, 1917. The record is brought here for review by writ of error.

It is contended with great earnestness that the defendant did not fire the shot that killed Carugati, and that the evidence was not sufficient to justify the verdict.

Somewhere between 5:30 and 6:00 o'clock in the evening of July 1, 1916, the defendant was in the saloon where Carugati was tending bar. At the same time there was in the saloon an old man by the name of Quaz, who had a jug. A controversy arose between defendant and Quaz about the jug, defendant apparently attempting to take it away from the owner. The evidence shows that the deceased remonstrated with defendant, but defendant persisting in his efforts to take the jug away from the old man, Carugati came out from behind the bar apparently to stop the controversy. Defendant thereupon struck at deceased, who dodged the blow and knocked defendant down. Three witnesses testified to being in the saloon at the time and to what occurred. Two of them testified that when Carugati knocked defendant down defendant bit him on the leg below the knee, and that Carugati kicked loose from him. It is not denied that Carugati then picked defendant up and put him out of the

saloon. He was gone but a short time when he returned with another man. The witnesses testified that defendant came back into the saloon within from five to ten minutes after he was put out. Defendant himself testified he came back in about one minute. When defendant was put out of the saloon he told Carugati, in Italian, "You will pay for this," or words meaning that in substance. The man who came into the saloon with defendant after he had been put out was named Carmen Barbousch. He disappeared after the shooting and has not been seen since. When defendant and Barbousch came into the saloon they went to the bar and Barbousch inquired of Carugati what was the matter. One of them,—the evidence is conflicting as to which one it was,—attempted to strike Carugati, who was behind the bar, and defendant spat in his face. One of the two,—defendant or Barbousch,—picked up a glass with a handle that was on the bar and went through swinging doors toward the east end of the bar, apparently for the purpose of going around the east end of the bar to get behind it. Deceased started toward the same end of the bar, and as he did so took from underneath the bar a small base ball bat. While his right hand was uplifted in the attitude of striking, two shots were fired, one of which entered his body about two inches below the right arm-pit, passed through his heart and killed him instantly. Both defendant and Barbousch fled from the saloon, and defendant was arrested shortly afterwards at the house of a friend a few blocks away.

Defendant testified in his own behalf and denied that he did the shooting. He claimed he was the man who went through the swinging doors around to the east end of the bar, where he was met by the deceased, who struck him on the head with a ball bat, and that just at that time the two shots were fired, one of which killed Carugati, but that he did not know who fired the shots. Five witnesses, one of whom was placed on the stand by defendant, testified that

Barbousch was the man who grabbed a glass off the bar and went through the swinging doors around to the east end of the bar, where he was met by the deceased with a ball bat, and that defendant, standing in the bar-room and near the bar, shot the deceased. One of said five witnesses testified to seeing the defendant take the revolver from his pocket, and all testified in the most positive terms to seeing him fire two shots. It is not contended that more than two shots were fired. Eugenio Ceci, on behalf of defendant, testified that it was defendant who went through the swinging doors to the east end of the bar, and he also testified that the shooting was done at that place, and that at the time of the shooting Barbousch was in the bar-room and that he did not fire a shot. According to his testimony the shooting was done by defendant. From a consideration of the evidence on this branch of the case we are satisfied that the jury were fully warranted in concluding that defendant was not the man who went through the swinging doors to the east end of the bar but that Barbousch was the man who did so, and that defendant remained in the bar-room and shot Carugati while he was in the attitude of striking Barbousch with the ball bat.

Counsel for defendant contends that defendant had been knocked down, kicked in the face and put out of the saloon by Carugati, and that if the proof warrants the conclusion that he armed himself with a revolver and returned to the saloon he did no more than he had a right to do after having been violently assaulted by a man much larger and stronger than himself, to protect himself against another possible assault from the same person,—citing *Filippo* v. *People*, 224 Ill. 212; and it is contended that, in any event, if defendant was guilty of any crime at all it was manslaughter. That defendant committed the homicide we regard as so clearly proven that the jury could not have reasonably come to any other conclusion, and we cannot say the elements necessary to constitute the killing murder were

not also proven beyond reasonable doubt. The defendant brought the treatment he received the first time he was in the saloon on himself by his wrongful conduct. There was no enmity or ill-feeling between defendant and deceased before that time, and it does not appear that Carugati sought to do anything more than to require defendant to let the old man, Quaz, and his jug, alone. When defendant refused to obey Carugati's request to that effect, made from his place behind the bar, he came out into the bar-room to protect the old man, which he had a right to do. There is no proof that deceased made any threat or attempt to assault defendant until after defendant had assaulted him. The assault made by deceased, who was a larger man than defendant, does not, in view of defendant's actions, appear to have been of a wantonly brutal character. It is said in addition to knocking him down deceased kicked defendant in the face. Two witnesses testified that while defendant was down he bit deceased's leg below the knee and that deceased kicked him loose, which was not a wanton or unnatural thing to do under the circumstances. Defendant provoked the assault upon himself, and his own misconduct was responsible for his being knocked down, kicked and put out of the saloon. After that was done he was in no further danger at the hands of Carugati, and his arming himself and returning with a friend to attack deceased, who was attending to his business, was wholly unwarranted and not justifiable under the decision of *Filippo* v. *People, supra,* or any other case. In the *Filippo case* the deceased was the aggressor in the encounter which occurred before Filippo armed himself and shot deceased, and he was also the aggressor in the encounter when the shooting occurred, shortly afterwards.

Whether, under all the circumstances, the killing was murder or manslaughter was submitted to the jury under proper instructions. According to the testimony of every witness who was present at the homicide it was committed

by the defendant. Ceci, a witness for defendant, alone testified that it was defendant who left the bar-room with a glass and went through the swinging doors, the apparent purpose of which was to go around the end of the bar to get back of it, where Carugati was, and that the shooting occurred back of the swinging doors while Carugati was in the act of using a ball bat to strike. The defendant also testified he was the man who went through the swinging doors towards the east end of the bar but denied he did any shooting and said he did not know who did it. Defendant claimed to have been considerably bruised and cut in the first encounter with Carugati, and that when he went through the swinging doors he did so for the purpose of leaving the saloon, and that at the time the shooting occurred Carugati followed him with a club and struck him with it three times. He testified he had a "broken head," bumps on his head and other injuries resulting from the assault, but that he did not shoot Carugati and did not know who did. A jury in a criminal case has no right to arbitrarily disregard the testimony of a competent and reliable witness, but it cannot reasonably be said that the jury in this case acted arbitrarily or unjustifiably in concluding that the testimony of the five witnesses as to how the shooting occurred, and who did it, was true. A judgment of conviction will not be reversed as unwarranted by the evidence merely because there is a conflict in the testimony, but will only be reversed where the evidence is so unreasonable, improbable or unsatisfactory as to justify entertaining a reasonable doubt of defendant's guilt. (*People* v. *Hohimer,* 271 Ill. 515.) We have carefully read Ceci's testimony and find it of a character which does not produce the conviction of its truth and sincerity. If the homicide occurred as testified by Rimolde, Barrelli, Witt, Sivert and Mansfield, it cannot be said the jury were not warranted in finding defendant guilty of murder. The fact that the revolver with which the killing was done was not found on defendant's

person and although search was made it was not found any-
where else, and the further fact that some of the witnesses
disagreed as to what defendant wore on his head at the
time of the shooting, are not of a character to weaken the
case made by the prosecution.   There were present, accord-
ing to the evidence, all the elements necessary to constitute
the crime murder.

It is apparent from the testimony as to the condition of
defendant when arrested and when examined by a physician
two days after his arrest, that whatever injuries he received
at the hands of Carugati were superficial and not of a seri-
ous character.   The physician testified there were no evi-
dences of a broken head.   The left eye was slightly discol-
ored; there was a bruised spot on the forehead above the
nose, about the hair-line, one-half inch in size; a slight
scratch on the left ear; no marks on the head; on the left
arm at the elbow there were three small scratches; on the
right arm at the elbow. there was a bruised spot extending
upward on the arm about six inches, and the left tonsil was
slightly enlarged and inflamed.   These were the evidences
on July 3 of the injuries received by defendant on the even-
ing of July 1 in his encounter with Carugati, and they do
not indicate he was brutally assaulted.   There were then no
evidences of a "broken head" or bumps on defendant's head
as a result of being struck with a club.   The time elapsing
after defendant was knocked down and put out of the sa-
loon before his return, armed and with a friend, was esti-
mated by the witnesses as from five to ten minutes.   De-
fendant himself testified the time was about one minute.

Counsel for defendant contends that his treatment by
Carugati excited in him a violent and irresistible passion,
and the time between the provocation given and his return
and renewal of the difficulty was not sufficient to allow his
passion to cool or the voice of reason and humanity to be
heard, and that the killing cannot be attributed to revenge
but at most was only manslaughter.   We have before re-

ferred to the circumstances and character of the assault made by the deceased upon defendant which counsel claims was sufficient provocation to excite in defendant a violent and irresistible passion. The jury found, and a reviewing court cannot reasonably say they were not justified in finding from the evidence and all the facts and circumstances attending the homicide, that the killing was attributable to deliberate revenge and was murder. At the request of both parties the court instructed the jury what elements were necessary to be proven to authorize a conviction for murder and under what state of facts a homicide should be considered manslaughter. On defendant's motion the jury were instructed that if defendant killed Carugati under such circumstances as the instructions pointed out would reduce the crime to manslaughter, then the jury should find defendant guilty of manslaughter and not of murder. The existence and sufficiency of an irresistible passion under which the slayer acts, and whether it arose from provocation so aggravated in character as to render the slayer's mind incapable of cool reflection, and whether it furnished the incentive to his action, are all questions for determination by the jury. *Bolzer* v. *People*, 129 Ill. 112; *Bonardo* v. *People*, 182 id. 411; 13 R. C. L. 787.

Complaint is made of the ruling of the court in giving certain instructions on the part of the prosecution. The most serious attack is upon People's instruction No. 2, which is as follows:

"The court instructs the jury that in order to constitute malice it is not necessary that a person has brooded over and meditated upon the performance of the act, if any, for a considerable length of time. It is sufficient to constitute malice that the act done, if any, is deliberate and intentional and not done upon a sudden heat of passion caused by provocation apparently sufficient to make the passion irresistible. Malice is always implied where one person deliberately injures another."

It is the last sentence of this instruction the giving of which it is urged is prejudicial error. It is not strictly accurate in all cases to say that malice is always implied where one person deliberately injures another, though that was said in the opinion of this court in *Davison* v. *People,* 90 Ill. 221, and quoted with approval in *Spies* v. *People,* 122 id. 1, and *Marzen* v. *People,* 173 id. 43. In support of the objection to the instruction counsel relies upon *Friederich* v. *People,* 147 Ill. 310, and *Hammond* v. *People,* 199 id. 173. In the first mentioned case the following instruction was given: "The court instructs you that every man is presumed to intend the natural and probable consequences of his act unless a different intent be proved, and the use of a deadly weapon in making an assault will be presumed to be with felonious and malicious intent unless a different intent be proved." It was held that it was erroneous to instruct the jury that the use of a deadly weapon in making an assault will be presumed to be with felonious and malicious intent unless a different intent be proved. The court said the instruction, in effect, told the jury that the use of a deadly weapon in making an assault, no matter under what circumstances it was made, created a presumption of malicious intent and entirely ignored the circumstances under which the weapon was used. In the *Hammond case* an instruction was given for the prosecution as follows: "The law implies malice from the deliberate and intentional use of a deadly weapon. Malice is always presumed where one person deliberately injures another." The defense in that case was self-defense, and the court said the instruction was incompatible with the law of self-defense; that an intent to kill may not be an intent to commit murder but to take the life of another in self-defense or upon a sudden heat of passion, which would reduce the crime to manslaughter. The complete instructions in those two cases had nothing in them qualifying or limiting the language condemned. The language complained of in this case is only the last sen-

tence of the instruction. What precedes it is a statement of under what circumstances the law will imply or presume malice, and it cannot be questioned that a deliberate injury to another under circumstances where none of the elements recited in the instruction existed would be sufficient to raise the presumption of malice. While malice may not always be implied where one person deliberately injures another, it is always implied where the injury is deliberate and intentional and not done upon a sudden heat of passion caused by provocation apparently sufficient to make the passion irresistible or when not done in self-defense. In *Davison* v. *People, supra,* it was said: "Malice is always presumed where one person deliberately injures another. It is the deliberation with which the act is performed that gives it character. It is the opposite of an act performed under uncontrollable passion, which prevents all deliberation or cool reflection in forming a purpose." This language was quoted with approval in *Spies* v. *People, supra,* and *Marzen* v. *People, supra.* In the case here under consideration defendant denied doing the killing and there was no question of self-defense in the case. The instruction told the jury that it was necessary to constitute malice that the killing should be deliberately and intentionally done and not upon a sudden heat of passion, and a jury of reasonable men would understand that malice would always be implied under such circumstances. They could not reasonably have supposed the instruction to mean that the law would imply malice from the mere injury of one person by another, but they would understand the injury must be deliberate and intentional and not done in the sudden heat of passion, under great provocation. Considering the instruction as a whole it was not misleading, and under the defense interposed and facts proven in this case was not prejudicial to defendant.

The other complaints made of the rulings of the court in giving instructions for the People and refusing one instruction offered by the defense are not of sufficient im-

portance to require discussion in detail. There was no error in giving and refusing instructions.

It is also contended that the penalty fixed by the jury is excessive and that it was the result of passion and prejudice. It is not claimed defendant did not have a fair trial nor is any question raised as to the admission and rejection of testimony. It is not charged that the jury was not a fair, competent and lawful jury or that anything occurred during the progress of the trial to excite their passions or prejudices. So far as the record shows, the judge who presided at the trial was fair and impartial and the trial was conducted in an orderly, dignified manner, and defendant was denied no right he claimed to be entitled to under the law in presenting his case. While the penalty is the severest authorized by law, it is a penalty which the law authorizes to be inflicted upon a defendant found guilty of murder. The law makes it the duty of the jury to say by their verdict what the punishment shall be, and unless it clearly appears that they have abused their power it is not the province of a reviewing court to interfere. In *Farris v. People,* 129 Ill. 521, and *People v. King,* 276 id. 138, the judgments were reversed because of the admission of testimony which was held to be improper and incompetent and was of a character calculated to influence the jury in fixing the punishment. No such question exists in this case, and we find no warrant in the record that would justify this court in setting aside and reversing the judgment, and it is therefore affirmed.

The clerk of this court is directed to enter an order fixing the period between nine o'clock in the forenoon and four o'clock in the afternoon of the first day of March, 1918, as the time when the original death sentence entered in the circuit court of Will county shall be executed. A certified copy of such order shall be furnished by the clerk of this court to the sheriff of Will county.

*Judgment affirmed.*